## INDIANAPOLIS NORTHERN TRACTION COMPANY ET AL. *v.* ESSINGTON.

[No. 7,634.    Filed November 1, 1912.    Rehearing denied February 13, 1913.    Transfer denied October 17, 1913.]

1. SPECIFIC PERFORMANCE.—*Defenses.*—*Adequacy of Legal Remedy.*—Specific performance of a railroad company's agreement in a right of way deed to construct and maintain a suitable overhead crossing over its track with proper approaches will not be denied on the ground that under §5711 Burns 1908, Acts 1903 p. 426, §5, plaintiff has a right to enter upon defendant's right of way and construct a grade crossing, where it appears that plaintiff is injured and that the remedy suggested would not afford as complete and adequate relief as that afforded by equity.    p. 289.

2. EQUITY.—*Defenses.*—*Adequacy of Legal Remedy.* — Equitable relief will not be denied on the ground that a legal remedy exists, unless the remedy at law is as practical and efficient as that afforded in equity.    p. 289.

3. SPECIFIC PERFORMANCE.—*Contracts Enforceable.*—*Building Contracts.*—While as a rule, equity will compel specific performance of a contract only when it can be performed by a single act or transaction, and will not generally decree the performance of contracts for the construction of buildings and other works of a complicated character, requiring superintendence of the work covering a considerable period, where defendant has acquired land from plaintiff and as a part of the consideration has agreed to erect a structure thereon for plaintiff's benefit, and defendant continues to retain and enjoy the land, the rule is not applicable, since in the absence of a statute there is no adequate remedy, so that where a railroad company after acquiring a right of way and laying its track thereon, failed to comply with its agreement in the right of way deed to construct an overhead crossing over its track for plaintiff's benefit, such agreement will be specifically enforced.    p. 290.

4. SPECIFIC PERFORMANCE. — *Contracts Enforceable.* — *Indefinite Contracts.*—The contract of a railroad company, made as a part consideration for its right of way, to erect for grantor's benefit an overhead crossing over its tracks at the intersection of such track with a certain lane on grantor's farm, and specifying that same was to be 14 feet wide over grantee's tracks with proper approaches on either side and to be not less than 22 feet in the clear from the rail grade, was sufficiently definite and certain to admit of specific enforcement.    p. 292.

5.  SPECIFIC PERFORMANCE.—*Contracts Enforceable.—Scope of Rule.* —The rule that equity will not attempt to specifically enforce a contract which by its terms stipulates for a succession of acts the performance of which will be continuous and require protracted supervision, though general, is not of universal application, and admits of exceptions in proper cases.  p. 295.

6.  SPECIFIC PERFORMANCE. — *Complaint. — Sufficiency. — Performance of Details of Contract.*—A complaint for the specific performance of a contract for the erection of an overhead railroad crossing, which alleges a contract to erect a crossing of certain dimensions "suitable and proper" for a farm crossing, was not insufficient because it did not describe in detail the kind and character of the overhead structure demanded and allege that the structure demanded was reasonably suitable and proper for the purpose intended, since it is not necessary that every detail of construction should be put in issue and determined by the court before entering a decree for specific performance, but they may be determined and settled by supplemental orders.   p. 296.

7.  SPECIFIC PERFORMANCE.—*Answer.—Unconscionable Contracts.*— In an action for specific performance of the contract of a railroad company to erect an overhead crossing over its right of way through plaintiff's land, an answer alleging that plaintiff, knowing defendant's necessities at the time of the sale of her land for a right of way, forced a hard and unconscionable bargain whereby, in addition to exacting the agreement which she sought to have performed, she obtained more than the reasonable value of the land sold, but which failed to allege how much the remainder of plaintiff's land was injured by the location of the railroad across it, or what would be a fair compensation for such injury, was insufficient to show that the contract was unfair or inequitable.  p. 297.

8.  SPECIFIC PERFORMANCE.—*Defenses.—Unconscionable Contract.*— Where a railroad company took possession of a right of way, purchased under a deed, in which it agreed to erect an overhead crossing for grantor's benefit, and constructed its railroad and continued in the possession and enjoyment of the premises, it is not in position to claim that the agreement was so unfair and unconscionable as to prevent its specific performance in behalf of the grantor.  p. 298.

9.  SPECIFIC PERFORMANCE.—*Defenses.—Impossibility.* — Where the plaintiff sought the specific performance of a contract by a railroad company to construct an overhead crossing over its right of way through plaintiff's land, defendant cannot be relieved of performance on the ground that it is impossible to erect such crossing without building the approaches upon the land of plaintiff, since plaintiff by sueing thereby gave her implied permission to

enter upon and use so much of her land as is necessary to construct such approaches.  p. 299.

10.  SPECIFIC PERFORMANCE.—*Inequitable Contracts.—Complaint.—Burden of Proof.*—While an unfair or inequitable contract will not be specifically enforced, and a complaint for the specific performance of such a contract is demurrable where it appears upon its face that it is unjust, or inequitable, or subject to other equitable defense, the burden rests upon the defendant, in the absence of such showing on the face of the complaint, to allege and prove that the contract is unjust or inequitable.  p. 300.

From Hamilton Circuit Court; *Meade Vestal*, Judge.

Action by Mary E. Essington against the Indianapolis Northern Traction Company and others.  From a judgment for plaintiff, the defendants appeal.  *Affirmed.*

*James A. Van Osdol, Louis B. Ewbank* and *Kane & Kane,* for appellants.

*Shirts & Fertig,* for appellee.

LAIRY, J.—Appellee filed this suit to compel specific performance of a covenant contained in a deed by which she conveyed to the first named appellant a strip of land constituting its right of way across her farm for an electric interurban railway.  The house and other buildings on appellee's land were situated about forty rods back from the highway and were reached by a private lane extending over her lands.  The right of way conveyed to appellants crosses the land of appellee about half way between the buildings and the road and, at the point where it intersects the private lane, there is a cut eight or ten feet in depth.  The deed contained the following covenant, which constituted a part of the consideration for the conveyance: "It is agreed between the parties to this conveyance that the grantee shall construct and maintain a suitable and proper overhead crossing 14 feet wide over grantee's railway track with proper approaches on either side, said crossing not to be less than 22 feet in the clear from the rail grade and to be located at a point where the present lane of grantor's land will be intersected by grantee's railroad grade."  The In-

dianapolis and Northern Traction Company took possession of such right of way under this deed and an electric interurban railway was constructed thereon and has been operated ever since by said appellant and its successors, the other appellants, who according to the averments of the complaint assumed the obligations of the covenant contained in the deed by subsequent contracts. Appellants have provided a grade crossing on appellee's land about 320 feet north of the point where the lane intersects the right of way, but have failed and refused to construct the overhead crossing for which the deed provides.

The trial court made a special finding of facts and announced conclusions of law thereon, and gave judgment in favor of appellee decreeing and ordering appellants to specifically perform the covenant in the deed by the construction of the overhead crossing.

The first question presented for our consideration is the sufficiency of the complaint to withstand a demurrer for want of facts. The first objection urged to the com-

1. plaint is that the facts averred show that the plaintiff has an adequate and complete remedy at law. It is suggested that she had a right under our statute to enter upon the right of way of the defendant and construct a crossing by spiking planks upon the cross-ties and by constructing grades and approaches thereto. §5711 Burns 1908, Acts 1903 p. 426, §5. It is true that a court of equity will enforce the specific performance of contracts only in cases where an injury is shown and where it also appears that a remedy at law by compensation in damages would not be adequate; but in this case it clearly appears that the plaintiff is injured by the failure of the defendant to construct the overhead crossing agreed upon and that the remedy suggested would not be so full, complete and

2. adequate as that afforded by equity. Equitable relief will not be denied unless the remedy at law

is as practical and efficient as that afforded in equity. *English* v. *Smock* (1870), 34 Ind. 115, 7 Am. Rep. 215; *Clark* v. *Jeffersonville, etc., R. Co.* (1873), 44 Ind. 248; *Watson* v. *Sutherland* (1866), 5 Wall. 74, 18 L. Ed. 580.

Appellants next assert that the covenant or agreement, in reference to the construction of the overhead crossing, contained in the deed and set out in the complaint, 3. does not belong to that class of contracts which may be specifically enforced. As a general rule equity will undertake the specific enforcement of such contracts only as can be performed by a single act or transaction, and the performance of contracts for the construction of buildings and other works of a complicated character, requiring superintendence of the work covering a considerable period, will not be specifically decreed, but the parties will be left to their remedy at law. *Louisville, etc., R. Co.* v. *Bodenschatz Stone Co.* (1894), 141 Ind. 251, 39 N. E. 703; *Thiebaud* v. *Union Furn. Co.* (1895), 143 Ind. 340, 42 N. E. 741; *Kendall* v. *Frey* (1889), 74 Wis. 26, 42 N. W. 466, 17 Am. St. 118; *Bromberg* v. *Eugenotto Constr. Co.* (1908), 158 Ala. 323, 48 South. 60, 19 L. R. A. (N. S.) 1175; *Robinson* v. *Luther* (1907), 134 Iowa 463, 109 N. W. 775; *Oregonian R. Co.* v. *Oregon, R., etc., Co.* (1885), 37 Fed. 733. In most cases involving the breach of a contract for personal services or for the erection of buildings or other structures, the remedy at law is adequate. If A employs B to erect a building or other structure at a fixed price and B refuses to perform his contract, A may employ others to do the work and recover from B the damages occasioned by his breach of contract. In such cases the award of damages is an adequate remedy, but in cases where the defendant has acquired land from the plaintiff and as a part of the consideration for the conveyance has agreed to erect a structure thereon for the benefit of plaintiff, and where the contract has been partly performed so that the defendant is enjoying the benefits of the same, a different rule applies. *Wilson* v. *Furness R. Co.* (1869),

L. R. 9 Eq. 28, 33; *Birchett* v. *Bolling* (1817), 5 Munf. (Va.) 442; *Stuyvesant* v. *Mayor, etc.* (1845), 11 Paige (N. Y.) 414; *Grubb* v. *Starkey* (1894), 90 Va. 831, 20 S. E. 784. In such a case the plaintiff has no right to enter upon the lands conveyed to the defendant and erect the structure, in the absence of a statute authorizing him so to do, and he is therefore without adequate remedy unless the court may compel the specific performance of the contract. In the absence of such a remedy, the defendant may retain and enjoy the land without yielding to the plaintiff the consideration upon which the conveyance was based. The general rule that a court of equity will not decree the specific performance of a building contract does not apply in such a case. *Storer* v. *Great Western R. Co.* (1812), 12 L. J. Ch. 65; *Columbus* v. *Cleveland, etc., R. Co.* (1904), 25 Ohio Cir. Ct. 663; *Gregory* v. *Ingwersen* (1880), 32 N. J. Eq. 199.

There is no universal rule that courts of equity will not enforce a contract which required some building to be done or some supervision to be exercised. In the case of *Union Pacific R. Co.* v. *Chicago, etc., R. Co.* (1895), 163 U. S. 569, 16 Sup. Ct. 1173, 41 L. Ed. 265, the Supreme Court of the United States enforced by a decree for specific performance a complicated contract made by one railway company to permit another to use its tracks. In *Murray* v. *Northwestern R. Co.* (1902), 64 S. C. 520, 42 S. E. 617, the court specifically enforced a contract on the part of a railway company to establish and maintain a passenger station. *Storer* v. *Great Western R. Co., supra,* was a case in which the court compelled the defendant to construct and forever maintain an archway and its approaches. The court said there was no difficulty in enforcing such a decree. In *Wilson* v. *Furness R. Co., supra,* the defendant was compelled to erect and maintain a wharf. The objection that the judgment in this case involves continuous acts and supervision of the court is well met by the reasoning in *Joy* v. *St. Louis* (1890), 138 U. S. 1, 47, 11 Sup. Ct. 243, 34 L. Ed. 843, where the court

said: "In the present case, it is urged that the court will be called upon to determine from time to time what are reasonable regulations to be made by the Wabash Company for the running of trains upon its tracks by the Colorado Company. But this is no more than a court of equity is called upon to do whenever it takes charge of the running of a railroad by means of a receiver. Irrespective of this, the decree is complete in itself and disposes of the controversy; and it is not unusual for a court of equity to take supplemental proceedings to carry out its decree and make it effective under altered circumstances." To the same effect is the case of *Prospect Park, etc., R. Co.* v. *Coney Island, etc., R. Co.* (1894), 144 N. Y. 152, 39 N. E. 17, 26 L. R. A. 610, where a contract to run street cars for a series of years over a track of another company to a depot was specifically enforced over the objection that it required the exercise of skill and judgment and a continuous series of acts. The contract which this complaint seeks to enforce falls clearly within the exception to the general rule. *Cincinnati, etc., R. Co.* v. *Wall* (1911), 48 Ind. App. 605, 96 N. E. 389; 3 Pomeroy, Eq. Jurisp. (3d ed.) §1402 and notes.

Appellants also contend that the contract set up by the complaint is so uncertain and indefinite in its terms as to preclude its specific performance by the courts. The contract provides for a suitable and proper overhead crossing, 14 feet wide over grantee's tracks with proper approaches on either side, said crossing to be not less than 22 feet in the clear from the rail grade and to be located at a point where the present lane on grantee's land will be intersected by grantee's railroad grade. This contract does not specify the kind of abutments, or the character or weight of the girders or other parts of the structure; but it does appear from the averments of the complaint and from the covenant of the deed itself that an overhead farm crossing was contemplated, and one that was suitable and proper for that purpose. Under the authorities we

MAY TERM, 1913. 293

Indianapolis, etc., Traction Co. v. Essington—54 Ind. App. 286.

think that the contract was sufficiently certain and definite to admit of specific enforcement. The case of *Lawrence* v. *Saratoga Lake R. Co.* (1885), 36 Hun 467, was a suit in equity to compel the specific performance of a contract which provided, among other things, that a railroad company should construct and maintain a bridge over its right of way. It was contended, as in this case, that this part of the contract could not be specifically enforced, because it was too uncertain and indefinite. Speaking on this question, the court said: "One of the three things was to construct and maintain a bridge over the railroad at the old highway at Lawrence's east line. We see nothing indefinite in this. There can be no difficulty in determining where the highway is. To insist that the railroad can not build a bridge because they do not know whether it should be of wood, or iron, or gold, or platinum, is a poor excuse. A bridge suitable for a highway crossing is what is intended, and that is definite enough. *Jones* v. *Seligman* [1880], 81 N. Y. 190. If defendant were willing to perform its agreement, it would have no difficulty in understanding its obligations. Another thing to be done is similar: to construct and maintain a neat and good bridge near the west end of the potato field, for an overhead drive over the railroad. It is not shown that the situation of the potato field cannot be determined, or that there is doubt which is its west end. Indeed, by the opinion of the learned justice it appears that the map given in evidence gave the places where the bridges were to be placed. But the defendant's objection, is that the size and material are not specified. We do not see why proof might not be given as to the size and material suitable and proper for bridges at those places and for the purposes indicated. It is often the case that proof of surrounding circumstances is needed to explain a contract. The learned justice, in his conclusions, holds that the defendant is bound by the provisions of the contract, and can only hold the land by performing its agreement, and that justice and equity

294    APPELLATE COURT OF INDIANA,

Indianapolis, etc., Traction Co. *v.* Essington—54 Ind. App. 286.

require that these provisions should be specifically performed. But if these provisions are so indefinite that the court cannot decide whether or not a pretended performance is a real performance, then how can the defendant be bound? We have these two alternatives: either the agreement is so indefinite that the court cannot determine when it has been performed. In that case it is void, and the defendants must surrender up the land. Or it is definite enough for the court to decide whether it has been performed. In that case defendants should be made to perform, unless there be some reason to the contrary. Plainly the defendant, who has taken possession of the land under this contract, cannot be permitted to say that the contract is so indefinite that the defendant cannot perform its side of the contract, but that without performing the defendant will keep that land for which the performance of the contract was the consideration.'' The specific performance of contracts has been frequently enforced by the courts where the terms of such contracts were no more definite than those of the one involved in this litigation. *Sanderson* v. *Cockermouth, etc., R. Co.* (1849), 11 Beav. 497; *Post* v. *West Shore R. Co.* (1890), 123 N. Y. 580, 26 N. E. 7; *Murray* v. *Northwestern R. Co.* (1902), 64 S. C. 520, 42 S. E. 617; *Blair* v. *St. Louis, etc., R. Co.* (1901), 92 Mo. App. 538; *Southern Pine, etc., Co.* v. *North Augusta Land Co.* (1892), 50 Fed. 26; *Jones* v. *Seligman, supra; Ross* v. *Purse* (1891), 17 Colo. 24, 28 Pac. 473; *Columbus* v. *Cleveland, etc., R. Co., supra; Owens* v. *Carthage, etc., R. Co.* (1904), 110 Mo. App. 320, 85 S. W. 987.

Appellants, however, attempt to distinguish the cases cited in support of this opinion from the case at bar. Without taking up the question at length, we will say that we have examined the statute of New York which is relied on as the basis for distinguishing the cases cited from that state. We find nothing in the statute referred to which could afford the courts of that state any reasons for the decisions cited.

Many of the decisions do not seem to be based upon the statute and the reasons assigned are such as apply with equal force in the absence of the statute to which counsel refer. Counsel attempt to make a distinction as to some of the other cases cited upon the ground that the contracts specifically enforced, were made for the benefit of the public, and that the duties enforced were of a public and not of a private nature; but an examination of the cases shows that many of them were brought by private individuals to enforce contracts made for their private advantage. The argument of counsel has failed to convince the court that the cases cited in support of the opinion are not in point, or that they do not afford authority for the conclusion reached. We are fully aware that the decisions of other states are not of binding force, but we are impressed with the justness of the rule announced in the cases cited, and the reasons upon which it is founded meet with our approval; and so, in the absence of any decision of our Supreme Court to the contrary, we are inclined to adopt and follow them.

It has been frequently announced by our Supreme Court and by this court that *as a general rule,* courts of equity will not attempt to enforce specifically a contract

5. which by its terms stipulates for a succession of acts the performance of which cannot be consummated by one transaction, but which will be continuous and require protracted supervision. *Columbus, etc., R. Co.* v. *Watson* (1866), 26 Ind. 50; *Thiebaud* v. *Union Furn. Co., supra; Ikerd* v. *Beavers* (1886), 106 Ind. 483, 7 N. E. 326; *Dukes* v. *Bash* (1901), 29 Ind. App. 103, 64 N. E. 47; *Morey* v. *Terre Haute, etc., Light Co.* (1910), 47 Ind. App. 16, 93 N. E. 710. We recognize and reaffirm this general rule, but we also recognize that the rule is not so universal as to admit of no exceptions. So far as we are informed, the Supreme Court of this State has never held that the rule was of universal application, or that cases might not arise where the equities would require the specific enforcement of a con-

tract involving some building and some supervision. The case of *Louisville, etc., R. Co.* v. *Bodenschatz Stone Co., supra,* is cited and relied upon by appellants. This case announces the general rule and correctly applies it to the facts involved, but there is no statement or intimation in the opinion indicating that the rule is one of universal application, or that an exception may not be recognized in a proper case.

Our attention is called to the case of *Columbus, etc., R. Co.* v. *Watson, supra,* in which it is held that a contract to keep a cattle guard in repair will not be specifically enforced. We are not called upon in this case to determine whether the contract to maintain the overhead crossing can be specifically enforced by ordering repairs when needed. The decree appealed from orders only that the crossing be built, and is silent upon the subject of repair. If the question of the power of the court to order repairs should ever arise, it will then be the duty of the court to decide it, but we are not required to anticipate such decision.

Another question not free from doubt, affecting the sufficiency of the complaint is presented by the demurrer. Ordinarily a complaint for specific performance is re-

6.   quired to state the terms of the contract sought to be enforced with more certainty than is required in a complaint which seeks only the recovery of damages for the breach of a contract. It has been said that the averments of the complaint should be so definite that the court, upon default, could draft a decree therefrom unaided by any evidence. *Burke* v. *Meade* (1902), 159 Ind. 252, 64 N. E. 880. On behalf of the appellants, the claim is made that the court cannot know judicially what kind of an overhead crossing is "suitable and proper" for a farm crossing, and that the complaint is insufficient because it does not describe in detail the kind and character of the overhead structure demanded and allege that the structure described was reasonably suitable and proper for the purpose intended. Ap-

pellants contend that such averments were necessary in order to tender an issue as to the character of the crossing to be erected under the contract and to justify the admission of parol evidence on this subject. We cannot adopt this view. In such a case it is not necessary that every detail of the work of construction should be put in issue and determined by the court before entering a decree for specific performance. The location of the overhead crossing and its general character are stated in the deed as well as in the complaint. A decree following the averments of the complaint in these respects could be enforced by the court. If appellants should undertake in good faith to comply with the order of court, and any questions should arise· as to the details of the work, such questions could be settled by supplemental orders.

A demurrer was sustained to a paragraph of answer filed by appellants setting up facts showing that appellee knowing the necessities of appellants, at the time of the sale of her land for a right of way, forced a hard and unconscionable bargain, whereby she obtained more than the reasonable value of the land sold, and in addition exacted an agreement for the erection and keeping in repair of the overhead crossing in question, which would cost the appellants $5,000. The action of the court in sustaining the demurrer to this paragraph of answer is assigned as error. This ruling was clearly right. The value of the land conveyed for a right of way is only one of the elements of compensation in such cases. The injury which results to the remainder of the tract of land often exceeds the actual value of the land occupied for right of way purposes. This paragraph of answer avers that the strip of land conveyed to appellants was not reasonably worth more than $300, and that the total consideration paid and actually received by appellee was $1,850; but it does not allege how much the remainder of appellee's land was injured by the location of the electric railway across it, or what would be a fair

298     APPELLATE COURT OF INDIANA,

Indianapolis, etc., Traction Co. v. Essington—54 Ind. App. 286.

compensation for such injury. The answer does not show that the contract was unfair or inequitable. This paragraph of answer is insufficient for another reason.

8. It does not deny that appellants and successors took possession of the real estate purchased under the deed, and that they have constructed their interurban railroad thereon, and that they are still in the possession and enjoyment of the same under the terms of the contract. We recognize the principle that he who seeks equity must do equity, and that he must come into court with clean hands. In applying these principles the courts have held that a contract which is unjust and inequitable will not be specifically enforced. *Ikerd* v. *Beavers, supra; Dukes* v. *Bash, supra.* If appellants after making a written contract for the purchase of this right of way, had refused to accept a deed or to pay the consideration; or if after accepting the deed they had refused to take possession of the land or to pay the consideration, and had offered to reconvey, they would have been in a position to invoke the equitable principle to which we have referred to prevent the specific enforcement of the contract. This principle cannot, however, be invoked by a party to a contract to prevent its specific enforcement against him, where he has accepted and retains the entire benefits of the contract which accrue to him, and where it is impossible to place the other part *in statu quo.* In this case it appears from the complaint that appellants and successors have taken possession of the land conveyed by the deed in question and that they have constructed their railway thereon, and have made a cut eight or ten feet in depth across the farm of appellee. These facts are not denied by this paragraph of answer, and it is not averred therein that appellants have offered to restore the land or to place appellee *in statu quo,* or that it is possible to do so. Under such a state of facts, the equitable doctrine which appellants seek to invoke by this paragraph of answer has no application.

It appears from the evidence and the findings in this case

MAY TERM, 1913. 299

Indianapolis, etc., Traction Co. v. Essington—54 Ind. App. 286.

that the necessary approaches to this overhead crossing if constructed can not be built entirely upon the right 9. of way of appellants, but that they will have to be constructed partly on the land of appellee. Under these facts appellants contend that, as they have no authority under the deed to enter upon appellee's land to construct the embankment, and, as the statute gives them no right to condemn land for such a purpose, the decree requires them to do a thing which is intolerable, if not impossible. If, under the terms of the decree entered, appellants were compelled to acquire from appellee the necessary ground upon which to construct a portion of the approaches to the crossing, this would operate as an intolerable hardship, for the reason that appellee might exact an exorbitant price therefor, and appellants, having no right to condemn, would be compelled to accept her terms or be in contempt of court. We are not inclined to give to the decree a construction which would involve such dire consequences to appellants. By bringing this action to enforce the specific performance of a contract which requires the construction of embankments partly on her own land, appellee will be held to have given her implied permission to enter upon and use so much of her land as is necessary as a foundation for such grade. The trial court evidently took the same view of the case, for, the decree provides; "that said approaches be extended as far as necessary along the line of said lane on the grounds of plaintiff, but no earth or material from the lands of the plaintiff shall be used without her consent." This portion of the decree clearly means that appellants may construct the embankment on appellee's land as far as necessary without obtaining her consent, but that they shall not use earth or other material from her land for the construction of the grade without her consent. Appellants are not in a position to complain of the decree in this respect as it is as favorable to them as they have a right to ask.

A number of other questions are presented by the briefs.

Some of these are dependent upon the main questions involved and are settled by the previous discussion. The questions raised and not specifically discussed are not regarded as being sufficiently grave to warrant a reversal in any event. The decree of the lower court is clearly right upon the merits, and, as no error is shown affecting the substantial rights of appellee, it should be in all things affirmed. Judgment affirmed.

## ON PETITION FOR REHEARING.

LAIRY, J.—It is earnestly contended by appellants in their brief on petition for rehearing that this court erred in holding the paragraph of appellants' answer insufficient, upon the ground that it failed to show that the contract sought to be enforced specifically was unjust, unfair or inequitable. Appellants state the rule to be that, in a suit for specific performance of a contract, the plaintiff must show affirmatively that the contract sought to be enforced is fair, just and equitable, and that it is supported by sufficient consideration and is capable of performance. It is claimed that the ruling complained of places upon the defendant the burden of showing that the contract is unfair and inequitable, and that it is erroneous for that reason.

It is well settled that a contract which is unjust, unfair or inequitable will not be specifically enforced; and that, if a party seeks to enforce any rights under such a contract, he must seek his remedy in a court of law. *Modisett* v. *Johnson* (1831), 2 Blackf. 431; *Ames* v. *Ames* (1910), 46 Ind. App. 597, 91 N. E. 509; *Ikerd* v. *Beavers* (1886), 106 Ind. 483, 7 N. E. 326. The courts of this State have never directly decided that the burden is on the plaintiff, in a suit for specific performance of a contract, to allege and prove that the contract sought to be enforced is fair and equitable, or that it was supported by an adequate consideration, or that it was capable of performance, or to negative any other equitable defense, and we believe that the

reverse of this proposition is the correct rule. If the contract sought to be enforced, as disclosed by the complaint, is clearly unfair and inequitable, or if the complaint by its affirmative averments discloses any other equitable defense, it will be subject to a demurrer for that reason. On the other hand, if the contract, on its face is not inequitable, and if the averments of the complaint do not disclose an equitable defense, the court will not presume as against the plaintiff, either that the contract is inequitable, or that an equitable defense exists. If a defendant seeks to show that a contract is unfair or inequitable by reason of extrinsic facts not disclosed by the contract itself, he must allege and prove such facts as a defense. *Finlen* v. *Heinze* (1903), 28 Mont. 548, 73 Pac. 123; *Western R. Corp.* v. *Babcock* (1843), 47 Mass. 346; *King* v. *Hamilton* (1830), 29 U. S. (4 Pet.) 311, 7 L. Ed. 869.

After a careful examination of appellants' petition and briefs on petition for rehearing, we are confirmed in our view of the law as expressed in the original opinion.

Petition for rehearing overruled.

NOTE.—Reported in 99 N. E. 757; 100 N. E. 765. See, also, under (1) 33 Cyc. 318; (2) 16 Cyc. 41; (4) 36 Cyc. 587, 599; (6) 36 Cyc. 774; (8) 36 Cyc. 609. As to specific performance of a construction contract or contract to repair, see 9 Ann. Cas. 160; Ann. Cas. 1913 A 923.